UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-80435-CIV-HURLEY/HOPKINS
(lead case)
(consolidated with Case No. 08-61862)

**MICHAEL S. POWELL,**

    Plaintiff,

vs.

**THE HOME DEPOT U.S.A, INC.,**

    Defendant.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART CROSS MOTIONS FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the court upon plaintiff Michael Powell's ("Powell") motion for summary judgment [DE # 522, Case No. 07-80435] and Home Depot U.S.A., Inc's ("Home Depot") motion for summary judgment [DE # 6, Case No. 07-61862].[1] For the reasons given below, the court will grant Powell's motion, and grant in part and deny in part Home Depot's motion.

### BACKGROUND

Powell is a principal of Boldstar Technical, LLC.[2] In July 2004, Home Depot approached Powell, with whom Home Depot had previously worked, to discuss a new potential project. Home Depot had decided that the radial arm saws used in its stores by its employees to cut lumber for customers were unnecessarily dangerous, and asked plaintiff to develop a safety device to make the

---

[1] Cases 07-61812-CIV-HURLEY and 07-80435-CIV-HURLEY were consolidated for all purposes on July 23, 2009.

[2] Boldstar was formerly a plaintiff in this action, but was dismissed with prejudice by court order dated May 28, 2008. *See* DE # 222.

saws safer. Powell agreed and developed a prototype of a device called "Safe Hands," a safety top apparatus designed to increase the safety of the particular radial arm saws used by Home Depot. Powell filed a patent application for Safe Hands on August 31, 2004, and placed the words "Patent Pending" on the device itself.

Home Depot asked Powell to provide a demonstration of Safe Hands to Home Depot executives. After the demonstration, Home Depot purchased Safe Hands units for eight of its stores, and promised to issue purchase orders for all of its nationwide stores if the product performed successfully in the initial eight locations. Several weeks later, Home Depot contacted Powell to purchase Safe Hands units for use in all of its stores nationwide. Home Depot offered to pay $1,200 per unit. This price was rejected by Powell as below his unit cost of production. At this point in the negotiation, talks between Powell and Home Depot ceased. According to the complaint, Home Depot began to discuss with Industriaplex, Inc.[3] the possibility of copying the Safe Hands product. Powell alleges that Home Depot instructed Industriaplex to travel to one of its stores to copy one of the trial Safe Hands units and design a similar device. Industriaplex subsequently developed its own saw guard, and Home Depot purchased Industriaplex's device in bulk for use in its stores.

Powell's patent application for the Safe Hands device was subsequently granted as Patent No. 7,044,039 (the "039 patent") on May 16, 2006. On May 17, 2007, Powell filed suit in this court. The complaint alleged that Home Depot and Industriaplex infringed, and continue to infringe, the '039 patent; that Industriaplex tortiously interfered with a business relationship between Powell and Home Depot; that Home Depot and Industriaplex are liable for engaging in a civil conspiracy to

---

[3] Industriaplex was formerly a defendant in this action, but was dismissed by joint stipulation of the parties. *See* DE # 450.

deprive Powell of his intellectual property rights; and that Home Depot is liable for fraudulently inducing Powell to produce the eight Safe Hands units for the product's initial trial run. Powell voluntarily dismissed the civil conspiracy claims, and on October 3, 2007, the court dismissed the tortious interference and fraud claims. *See* DE # 32.

On April 28, 2008, Powell and Home Depot filed cross-motions for summary judgment [DE # 158, 159]. The court conducted a hearing regarding the construction of disputed claim terms on May 15, 2008, pursuant to *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996). After the hearing, the court granted summary judgment in favor of Home Depot on the issue of literal infringement, but denied summary judgment on the issues of equivalents infringement and inequitable conduct. The court also granted summary judgment in favor of Powell on the issues of anticipation and obviousness.

On June 27, 2008, Powell instituted a second action against Home Depot and Industriaplex in Florida state court for misappropriation of trade secrets under Florida and Georgia law. The complaint alleges that Safe Hands was a trade secret and that Home Depot intentionally disclosed the trade secret to Industriaplex for the purpose of copying the machine. The action was later removed to the Southern District of Florida and assigned to this court, which consolidated the case with the previously-filed case for all purposes on July 23, 2009. On December 12, 2008, Home Depot filed the instant motion for summary judgment, arguing that Safe Hands is not a trade secret and that the statute of limitations bars the action.

On April 15, 2009, the court permitted Home Depot to file a third amended counterclaim, in which Home Depot newly asserted counterclaims for unjust enrichment and violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). The counterclaim for unjust

3

enrichment alleges that Home Depot provided the initial idea for, and later suggested modifications to, Safe Hands, and that Powell signed agreements with Home Depot that vest the right to Safe Hands in Home Depot. The counterclaim for violation of FDUTPA alleges that Powell employed surreptitious means to obtain the '039 patent, the intellectual property right of which allegedly belong to Home Depot. Powell then filed the instant motion for summary judgment as to both counterclaims, arguing, *inter alia*, that they are preempted by federal patent law.

### JURISDICTION

This court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the complaint asserts a claim under 35 U.S.C. § 271.

Venue is proper in this district pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to plaintiff's claims occurred in the Southern District of Florida.

### DISCUSSION

*A.     Standard of Review on Motion for Summary Judgment*

Summary judgment is warranted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of meeting this exacting standard. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). In determining whether summary judgment is appropriate, the facts and inferences from the record are viewed in the light most favorable to the non-moving party, and the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a

matter of law. *See Matsuhita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

The non-moving party, however, bears the burden of coming forward with evidence of each essential element of his claims, such that a reasonable jury could return a verdict in his favor. *See Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002). In response to a properly supported motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

The existence of a mere scintilla of evidence in support of the non-movant's position is insufficient; there must be evidence on the basis of which a jury could reasonably find for the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). A complete failure of proof concerning an essential element of the non-movant's case necessarily renders all other facts immaterial and entitles the moving party to summary judgment. *See Celotex*, 477 U.S. at 323; *Gonzalez v. Lee County Housing Authority*, 161 F.3d 1290, 1294 (11th Cir. 1998).

The standard for summary judgment is the same in the patent context as in any other. Summary judgment may be granted only if, after viewing the alleged facts in the light most favorable to the non-movant, there is no genuine issue whether the accused evice is encompassed by the claims. *See Novartis Corp. v. Ben Venue Laboratories, Inc.*, 271 F.3d 1043, 1054-55 (Fed. Cir. 2001).

### B. *Powell's Motion for Summary Judgment*

#### 1. *Preemption*

Powell contends that federal patent law preempts Home Depot's counterclaims for unjust

enrichment and violation of FUDTPA. Home Depot argues that its counterclaims are based not on federal patent law, but on Powell's breach of an implied contractual duty, a state law claim independent of any federal right.

Federal Circuit law governs whether federal patent law preempts state law claims. *See Ultra-Precision Mfg., Ltd. v. Ford Motor Co.*, 411 F.3d at 1369, 1376 (Fed. Cir. 2005). In the field of intellectual property, as in other contexts, "the question of whether federal law preempts state law involves a consideration of whether that law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Aronson v. Quick Point Pencil Co.*, 440 U.S. 257, 262 (1979). If a state law "offers 'patent-like protection' to discoveries unprotected under federal patent law," it frustrates the purposes the federal patent system, and is thus preempted by federal patent law. *Ultra-Precision.*, 411 F.3d 1376 (citing *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 156 (1989)).

In assessing whether a state statute provides "patent-like protection," a court must engage in an ad hoc inquiry, focusing on the conduct, as pled in the complaint, that forms that basis of the state law claim. *See Hunter Douglas, Inc. v. Harmonic Design, Inc*., 153 F.3d 1318, 1335 (Fed.Cir.1998). "If a plaintiff bases its tort action on conduct that is protected or governed by federal patent law, then the plaintiff may not invoke the state law remedy, which must be preempted for conflict with federal patent law." *Id.* If, by contrast, "the conduct is not so protected or governed, then the remedy is not preempted." *Id.*

Here, a review of Home Depot's pleadings shows that its counterclaims are based primarily on the allegation that Home Depot contributed to or discovered the initial idea for Safe Hands – that is, that Home Depot is the co-inventor of Safe Hands. Specifically, Home Depot's counterclaim for

unjust enrichment alleges that it conferred a benefit on Powell by providing "the initial idea for, and later suggested modifications to, an improved radial arm saw project," and that it would be "inequitable for Powell to retain the benefit [of Safe Hands], unless he make restitution to Home Depot." Home Depot's Am. Countercl. ¶¶ 36, 39. Home Depot's counterclaim for violation of FDUPTA alleges that Powell "surreptitiously" obtained the '039 patent "in his individual name based on ideas, suggestions, product improvements, and [i]ntellectual [p]roperty that he knew belonged to Home Depot." *Id.* at ¶ 46.

The central issue in the counterclaims – co-inventorship – is a field that is governed exclusively by federal patent law. *See Univ. of Colorado Found., Inc. v. Am. Cyanamid Co.*, 196 F.3d 1366, 1372 (Fed. Cir. 1999) ("The federal Patent Act leaves no room for states to supplement the national standard for inventorship."). Home Depot cannot circumvent federal patent law on co-inventorship by asserting state law counterclaims. Rather, to the extent that Home Depot seeks damages based on its contribution to the '039 patent, it must proceed under Title 35, which "contains explicit and detailed standards for inventorship." *Id.* Otherwise, Home Depot's counterclaims would "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," a result that would violate the Supremacy Clause. *See Aronson*, 440 U.S. at 262.

Home Depot, relying on *Univ. of Colorado Found., Inc. v. Am. Cyanamid Co.,* argues that its counterclaims are not preempted because it enjoyed a confidential relationship with Powell. 342 F.3d 1298 (Fed. Cir. 2003). In *Am. Cyanamid*, scientists at the University of Colarado (plaintiffs) provided Cyanamid (defendant) with a confidential manuscript regarding breakthrough pharmaceutical formulations that they intended to publish. *Id.* at 1302. Unbeknownst to the

7

scientists, Cyanamid copied the confidential information into a patent application and later obtained a patent. *Id.* at 1303. After learning of the patent, the scientists brought suit against Cyanamid and asserted, *inter alia*, a state-law claim for unjust enrichment. *Id.* The Federal Circuit held that the scientists' unjust enrichment claim was not preempted for two reasons: first, the claim sought restitution for "breach of a contract implied in law" and not patent-like protection for an idea that was publically disclosed or unpatentable; and second, the scientists sought damages for only the incremental profits Cyanamid made in using the patent to wrongly exclude other competitors. *Id.* at 1306

Home Depot's reliance on *Am. Cyanamid* is misplaced. As explained by the Federal Circuit in *Tavory v. NTP, Inc*, a later-decided case, "whether a confidential relationship existed [in *Am. Cyanamid*] was central to the unjust enrichment claim," thus helping the scientists avoid preemption, only because "Cyanamid's alleged breach of confidence resulted in a fraudulently-obtained patent they [sic] did not deserve." 297 Fed. Appx. 976, 983 (Fed. Cir. 2008). The plaintiff in *Tavory*, in contrast to those in *Am. Cyanamid*, "did not allege in his complaint that the named inventors should not have received the patents or that they were not in fact inventors of the claimed invention." *Id.* He instead alleged joint inventorship, and thus his unjust enrichment claim was preempted. *Id.* Similarly, Home Depot has not alleged that Powell should not have received the '039 patent or that it was the sole inventor of Safe Hands. As a result, unlike in *Am. Cyanamid*, the existence of a confidential relationship here has no bearing on Home Depot's claims.

Even were Home Depot's counterclaims properly based on a confidential relationship, they would still be preempted. *Am. Cyanamid* held that the scientists' state law claim was not preempted only to the extent that the scientists sought damages for the "incremental profits" conferred on

8

Cyanamid by a wrongfully obtained patent. *See Am. Cyanamid*, 342 F.3d at 1310.[4] Here, instead of seeking incremental profits, Home Depot seeks "disgorgement of *all* benefits (whether monies or property rights) unlawfully obtained, accepted, and retained by Powell." Home Depot's Am. Countercl. ¶¶ 40 (emphasis added). Such a remedy is preempted by federal patent law. *See Ultra-Precision*, 411 F.3d at 1380 (holding that because plaintiff made "no claim to an incremental benefit," its state-law claim was preempted).

Because Home Depot's counterclaims are based on allegations of co-inventorship, a field governed by federal patent law, the court concludes that the counterclaims are preempted. Therefore, the court will grant summary judgment in favor of Powell as to Home Depot's counterclaims for unjust enrichment and violation of FDUTPA on ground of preemption.

    2.    *Other Arguments*

Powell's motion for summary judgment also argues that Home Depot contributed no ideas or suggestions that were incorporated in the '039 patent; that the counterclaims are barred by the statue of limitations; and that the agreements signed by Powell on behalf of Boldstar cannot be imputed to Powell for the purpose of the counterclaims. The court, having determined that the counterclaims are preempted by federal patent law, need not address these arguments.

**C.    *Home Depot's Motion for Summary Judgment***

    1.    *Statute of Limitations*

Count I of Powell's complaint is for "Violation of Florida &/or Georgia Trade Secrets." Home Depot argues that to the extent that Powell's claim for misappropriation is based on Florida

---

[4] There, the court calculated the incremental profits by assessing the amount Cyanamid gained by virtue its ability to exclude generic competition through enforcement of the wrongfully obtained patent. *See Am. Cyanamid Co.*, 342 F.3d at 1304.

9

law, it is barred by the applicable statute of limitations. The court agrees. The statute of limitations under Florida's Uniform Trade Secrets Act (UTSA) is three years, and it is undisputed that Powell filed this action more than three years after learning of the alleged misappropriation. *See* FLA. STAT. § 688.007. Summary judgment is therefore granted on the misappropriation claim based upon Florida law.

Nonetheless, during oral argument on the instant motion, both parties agreed that Georgia law governs. In contrast to Florida, Georgia provides for a five-year statue of limitations, which had not run when Powell filed suit. *See* Ga. CODE. ANN. § 10-1-766. Powell must therefore proceed under Georgia law.

### 2. Whether Safe Hands is Entitled to Trade Secret Protection

Home Depot maintains that Safe Hands does not qualify as a trade secret. Under Georgia Law, a trade secret is defined as information that (1) derives economic value "from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use" and (2) is the subject of reasonable efforts to maintain its secrecy. O.C.G.A. § 10-1-761(4); *see Penalty Kick Management Ltd. v. Coca-Cola Co.*, 318 F.3d 1284, 1290-91 (11th Cir.2003) (applying Georgia law). "Whether information constitutes a trade secret is a question of fact." *See Coca-Cola*, 318 F.3d at 1291.

Home Depot argues that Safe Hands was readily ascertainable by proper means and Powell had no reasonable expectation of secrecy. Home Depot contends it acquired Safe Hands by proper means when it purchased eight units from Powell without a confidentiality agreement, and installed them in its stores. It also argues that Safe Hands was generally known and readily ascertainable because Powell installed the device in Home Depot's Stores, where members of the public could

10

openly view it, and because Powell trained thirty employees of a third-party on the functionality of the device.

Powell argues that he took reasonable steps to maintain the secrecy of Safe Hands. Powell contends that Home Depot had an implied duty of confidentiality, stemming from (1) meetings he held with Home Depot executives, at which Powell explained that he intended to secure a patent and refused to leave the machine with them, and (2) Powell's offering Home Depot a copy of the '039 patent application in exchange for a non-disclosure agreement. Moreover, Powell argues that the Safe Hands product was not accessible or easily visible to Home Depot customers, because a six-foot barrier existed around the product and customers were not permitted to touch or handle it. Finally, Powell claims that after selling Home Depot eight units, he placed the words "patent pending" as well as his contact information on the Safe Hands devices.

Viewing the evidence in the light most favorable to Powell, the court concludes that genuine issues of material fact preclude the award of summary judgment on the misappropriation claim. The record indicates questions of fact as to whether Powell's efforts to maintain the secrecy of Safe Hands were reasonable and whether Home Depot ascertained information regarding Safe Hands by proper means. The court will therefore deny Home Depot's motion for summary judgment on Powell's misappropriation claim.

## CONCLUSION

For the above reasons, the court will: (1) grant summary judgment for Powell on ground of preemption; (2) grant summary judgment for Home Depot as to the misappropriation claim based on Florida law; and (3) deny summary judgment on the misappropriation claim based on Georgia law.

Order Granting in Part and Denying in Part Cross-Motions for Summary Judgment
Powell v. The Home Depot U.S.A., Inc.
Case No. 07-80435-CIV-HURLEY/HOPKINS, *consolidated with* Case No. 08-61862

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that:

1. Powell's motion for summary judgment [DE # 522] is **GRANTED** as follows:

   a. Summary judgment in favor of Powell is granted on Home Depot's counterclaims for unjust enrichment and violation of Florida Deceptive and Unfair Trade Practices Act.

2. Home Depot's motion for summary judgment [DE # 6, Case No. 07-61862] is **GRANTED IN PART** and **DENIED IN PART** as follows:

   a. Summary judgment is granted in favor of Home Depot on Powell's misappropriation claim based on Florida law.

   b. Defendant's motion is otherwise denied.

**DONE** and **SIGNED** in Chambers in West Palm Beach, Florida, this 26th day of January, 2010.

_____
Daniel T. K. Hurley
U.S. District Judge

*Copies provided to counsel of record*